**BRUNNER et al. v. JOHNSON.**

**JOHNSON v. BRUNNER et al.**

Circuit Court of Appeals, Eighth Circuit. October 7, 1929.

Nos. 8512, 8513.

H. M. Cooley and Arthur L. Adams, both of Jonesboro, Ark., for plaintiff.

Charles D. Frierson, of Jonesboro, Ark., for defendants.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

KENYON, Circuit Judge. The receiver for the First National Bank of Marked Tree, Ark., as plaintiff, brought suit against Frank Brunner, alleging that on the 13th day of November, 1926, said bank was found by the Comptroller of the Currency to be insolvent, and was placed in the hands of a receiver; that on January 22, 1927, the Comptroller of the Currency made an assessment, payable March 1, 1927, upon the stockholders, equal to the par value of each and every share of the capital stock; that at the time of said assessment Frank Brunner, as trustee for his brother John and himself, was the owner of 20 shares of the capital stock of said bank of the par value of $2,000, evidenced by stock certificate No. 38, and the receiver asked judgment for the sum of $2,000 with interest. Frank Brunner filed an individual answer, and also a separate answer as trustee for his brother and himself. The answers set forth that on May 27, 1926, a new certificate of stock, No. 99, was issued to John Brunner for 10 shares of the original 20 shares. Demurrers to the answers were filed by plaintiff. The trial court sustained the demurrer as to that part of the answers setting forth a defense on the part of Frank Brunner to an assessment on the shares evidenced by certificate No. 38 not transferred to his brother, John Brunner, and overruled the demurrer as to the part of the answer relating to the shares held by John Brunner.

The result of these holdings was that Frank Brunner was held liable for the assessment as to 10 shares of stock, being the balance of certificate No. 38, and not liable for the assessment on the 10 shares which had been issued to John Brunner individually. No evidence was introduced, and the allegations of the answers and amendments thereto for the purpose of the demurrer must of course be taken as true. They show: That certificate No. 38 for the 20 shares of stock was issued to Frank Brunner March 7, 1919, he and his brother John being partners in business, he holding the stock as trustee for both of them; that on January 31, 1924, a 65 per cent. assessment was voluntarily levied by the directors of the bank upon its capital stock to restore impaired capital under Revised Statutes, § 5205 (USCA, tit. 12, § 55); that Frank Brunner declined to pay this assessment; that John Brunner was induced by representations made to him by officers of

the bank to pay his half of the assessment, and on May 18, 1924, paid $150 in cash and gave his note for $500, which he subsequently paid, thus completing payment of the voluntary assessment of 65 per cent. upon 10 shares embraced in certificate No. 38; that the new certificate, No. 99, for 10 shares of the par value of $1,000, was issued to him on May 27, 1926, and Frank Brunner had nothing to do with the transactions regarding certificate No. 99, which was arranged between John Brunner and the officers of the bank; that Frank Brunner surrendered certificate No. 38 for the 20 shares of stock to the bank March 15, 1924, intending that the bank should proceed to sell the same, as provided by the federal statutes; that he signed the blank assignment and power of attorney upon the back of the certificate, and through his brother John sent it to the bank, with instructions that it could be sold at public sale or transferred in any way the directors of the bank saw fit; that this certificate remained in the bank, and, when the bank failed, it was found pinned to the stub book, in which it appeared that certificate No. 99 had been issued to John Brunner, representing one-half of the stock of certificate No. 38. It appears that the bank did not proceed as provided by section 5205 of the Revised Statutes (USCA, tit. 12, § 55) to sell said stock of said Frank Brunner, and never did sell the same, although it made no demands of any kind upon Frank Brunner for 2½ years; that one C. A. Worthy was president of the bank, and Frank Brunner expected him to take over his stock, but apparently he did not do so; that the bank, in August, 1924, did advertise for sale, and sell to said Worthy, the remainder of the capital stock upon which the 65 per cent. assessment remained unpaid.

The record does not show why the stock held by Frank Brunner was excluded, but it is suggested in argument that the officers of the bank desired him to remain as a stockholder and to resume active connection with the bank. Some kind of bond was given by the board of directors of the bank to the Comptroller of the Currency about May 21, 1925, and another bond was given January 18, 1926. It is not clear from the record just what the purpose was in giving these bonds. It is argued that they stood in place of the assessment for a time, and that, because of the giving of the bond in 1924, the bank secured permission of the Comptroller to continue operation prior to the payment of the 65 per cent. assessment. However, the giving of the bonds is an unimportant matter, having no bearing on the legal questions involved.

The court entered judgment against Frank Brunner for the $1,000.00 assessment on the 10 shares remaining in certificate No. 38, and refused to enter judgment against him on the 10 shares represented by certificate No. 99. He appeals from the decision of the court against him, and the receiver appeals from the decision denying recovery against Brunner as to the stock represented by certificate No. 99.

It is the contention of the appellant Brunner that his surrender of the stock to the bank to be sold to pay the 65 per cent. assessment made by the board of directors under section 5205, Revised Statutes (12 US CA § 55), relieves him from liability upon the subsequent assessment of 100 per cent. made by the Comptroller of the Currency under section 5151, Revised Statutes (12 US CA § 63). Section 5205, Revised Statutes (12 USCA § 55), is plain. It was the duty of the officers of the bank upon surrender of this stock to sell the same at public auction after 30 days' notice given in the manner provided by the statute in order to pay the 65 per cent. assessment. This was never done. The capital stock of the institution had become impaired. The bank was presented with the alternative, either to liquidate, or to make an assessment under Revised Statutes, § 5205 (12 USCA § 55). It chose the assessment. If it had sold Frank Brunner's stock at a public sale, as it did the other stock upon which the assessments had not been paid, and the stock had brought the amount of the assessment, Brunner would have been relieved from responsibility, but the mere delivery of stock to the directors of the bank, accompanied by a disavowal of further liability, was not sufficient to relieve him from a stockholder's liability. While the officers of the bank failed to perform the duty which the statute imposed upon them, Brunner seems to have had no concern as to whether the officers of the bank had performed their duty as to the sale of the stock. At the time of the failure of the bank, appellant Brunner appeared on its books as the owner of 10 shares at least of its capital stock, and the doctrine is elementary that "there is a presumption of legal liability begotten by the presence of the name of the stockholder on the stock register of the bank." Logan v. Crissinger (D. C.) 290 F. 415, 417; Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 44 L. Ed. 571; Earle v. Carson, 188 U. S. 42, 23 S. Ct. 254, 47 L. Ed. 373. The cases upon which counsel for

Frank Brunner seem to rely in urging that the action in delivering the stock relieves him of liability are Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266; Apsey v. Kimball, 221 U. S. 514, 31 S. Ct. 695, 55 L. Ed. 834; State v. Ware, 82 Okl. 130, 198 P. 859, 45 A. L. R. 127; Dellert v. Stallman (C. C. A.) 29 F.(2d) 236. These cases are easily and clearly distinguishable.

In Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 64, 30 L. Ed. 266, a sale of stock had been made, and the court held that the responsibility of the defendant had ceased upon the surrender of the certificate of stock to the bank "and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as that officer knew, a transfer of the stock on the books of the association to the purchaser."

In Apsey v. Kimball, 221 U. S. 514, 31 S. Ct. 695, 55 L. Ed. 834, the shareholders who were held not liable for assessment had complied with the provisions of the federal statute in regard to withdrawing from a national banking association. The court held that the shareholders had performed every duty which the law imposed in order to secure a transfer of the stock, and the fact that it was not transferred on the register of the bank would not continue the shareholders' liability.

In State v. Ware, 82 Okl. 130, 198 P. 859, 45 A. L. R. 127, Ware had sold his stock and indorsed the certificate. He surrendered it for cancellation to the cashier of the bank, and later was informed by the officer of the bank having the books in charge that the stock had been transferred. It was held he was exonerated from future liability. The court held that a presumption of liability on shares of stock in an insolvent bank arising from the presence of a person's name on the stock register is of course rebuttable by evidence that a bona fide sale of the stock had been made and that the vendor had performed every duty which the law imposed in order to secure the transfer on the registry of the bank.

Dellert v. Stallman (C. C. A.) 29 F.(2d) 236, is an authority tending somewhat to support appellant's theory. However there was an agreement there to transfer the stock.

Here there was no contract of sale, no agreement of any kind with relation thereto, no assurance that, if the stock were sold, it would bring the amount of the assessment. No transferee was designated. Appellant washed his hands of the matter and turned it over to the officers of the bank under the supposition that they would do their duty. Their failure so to do cannot prejudice the creditors of the bank. Williams v. Stone (C. C. A.) 25 F.(2d) 831. We entertain no doubt that the court was entirely correct in holding Frank Brunner liable for the assessment upon 10 shares of stock.

■ The questions raised on the cross-appeal of the receiver are not as free from doubt. We are constrained, however, in view of the fact that the decision makes for substantial justice, to agree therewith. A new certificate for 10 of the shares covered by certificate No. 38 was issued to John Brunner after he had paid the assessment of January 31, 1924, on 10 shares of the stock. Whether the transaction amounted to a division of partnership assets or a sale to John Brunner is rather unimportant. There was a transfer to him of 10 shares of stock covered by certificate No. 38. Certificate No. 38 had been surrendered to the bank on March 15, 1924, for the purpose of sale to make good the assessment of 65 per cent. John Brunner was in fact the owner of one-half of this stock. Whether the bank was solvent at the time of the issuance of the stock certificate to John Brunner for the 10 shares may be doubtful, but it was some months before the bank went into liquidation. We think any liability as to this stock probably was transferred to John Brunner. Frank Brunner was paying no attention to the affairs of the bank, and was seemingly unconcerned with whether or not it was insolvent. He erroneously supposed that he had no further connection with it. John Brunner appeared upon the bank's records as owner of the 10 shares of stock represented by certificate No. 99. For 2½ years prior to the failure he was recognized as the owner of these 10 shares, and so appeared on the books of the bank at the time of the receivership. We do not feel warranted in disturbing the conclusion of the court.

The judgment is affirmed.